UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL WELLS,<br><br>Defendant. | Case No. 1:01-cr-253-3 (RCL) |

## MEMORANDUM ORDER

Defendant Michael Wells seeks from this Court a reduced sentence pursuant to the First Step Act of 2018. Mot., ECF No. 687. Wells has served approximately two-thirds of a 300-month sentence. The government disputes that Wells is eligible for a reduced sentence under § 404 of the First Step Act and otherwise opposes his motion.

### I. BACKGROUND

In 2001, a grand jury indicted Wells on four counts: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine (Count 1); (2) unlawful distribution of 5 grams or more crack cocaine (on September 13, 1999) (Count 7); (3) unlawful distribution of 50 grams or more of crack cocaine (on January 26, 2000) (Count 23); and (4) possession of a firearm in furtherance of a drug trafficking offense (Count 24). Indictment, ECF No. 1.

Wells went to trial with several co-defendants. In July 2003, a jury found Wells guilty of Counts 1, 23, and 24, and not guilty of Count 7. Verdict Form, ECF No. 371. The Probation Office prepared a Presentence Investigation Report ("PSR") for Wells, which determined that his drug offenses involved more than 1.5 kilograms of crack cocaine. PSR ¶ 37, ECF No 421. The sentencing court adopted these findings and the accompanying Guidelines calculations. Wells'

1

initial sentence was appealed and remanded for resentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Opinion of USCA, ECF No. 517. The court resentenced him to 300 months—240 months for Counts 1 and 23, to run concurrently, and 60 months for Count 24, to run consecutively to the drug offenses. Amended Judgment, ECF No. 605.

After a handful of failed post-conviction relief motions, Wells filed the present motion pursuant to § 404 of the First Step Act. Mot., ECF No. 687. Wells seeks a sentence reduction to time served, or else to the lower end of his updated Guidelines calculations.

## II.  LEGAL STANDARD

Congress enacted the Fair Sentencing Act in 2010. 124 Stat. 2372. The Act reduced the statutory penalties for cocaine base offenses in order to alleviate sentencing disparities between crack and powder cocaine. *See United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Act increased the threshold drug amounts required to trigger mandatory minimum sentences for crack cocaine offenses. 124 Stat. 2372 § 2. Before the Act, 50 grams of crack cocaine triggered a ten-year mandatory minimum. The Act increased that quantity to 280 grams. *Id.* Likewise, the 5 grams that triggered a five-year mandatory minimum was bumped up to 28 grams. *Id.*

Eight years later, Congress enacted the First Step Act. 132 Stat. 5194. Section 404 of the Act gives retroactive effect to sections 2 and 3 of the Fair Sentencing Act, and grants courts the discretion to reduce an eligible defendant's sentence. *Id.* § 404. Eligibility under the First Step Act is governed by § 404(a), which defines which offenses are covered. *Id.* § 404(a). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before

August 3, 2010." *Id.* The following subsection authorizes a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). Finally, § 404(c) imposes limitations and imparts discretion on the court: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* § 404(c).

### III. DISCUSSION

Federal courts are divided between competing interpretations of § 404(a) of the First Step Act. Which controls a defendant's eligibility: the drug quantity associated with the statute of conviction, or the actual quantity the defendant is held responsible for at sentencing? The dilemma has been well-illustrated by a hypothetical:

> A defendant charged in an indictment under Section 841(b)(1)(A)(iii) is convicted by a jury of a crack cocaine offense and sentenced before the Fair Sentencing Act. The jury checked a box on the verdict form indicating the defendant was responsible for 50 grams or more of crack cocaine, the highest quantity they were asked to consider. The defendant's presentence report, however, determined that the total amount of crack cocaine attributable to the defendant was 300 hundred [sic] grams. The defendant did not object to that quantity during sentencing. According to the government, the defendant in this hypothetical is not eligible for relief under the First Step Act because the uncontested amount found in the hypothetical presentence report, 300 grams, is enough to trigger the statutory penalty range under Section 841(b)(1)(A)(iii) even after the Fair Sentencing Act. The defense, however, would say this defendant is eligible because the Court may only look at to quantity as charged and found by the jury, and 50 grams of crack cocaine no longer triggers Section 841(b)(1)(A)(iii)'s penalty ranges after the Fair Sentencing Act.

*United States v. Boulding*, 379 F. Supp. 3d 646, 652 (W.D. Mich. 2019).

Most courts to consider the issue have agreed with Wells' "statute of conviction" interpretation. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019); *United States v. White*, 2019 WL 3719006, at *11–12 (D.D.C. Aug. 6, 2019); *United States v. Rose*, 379 F. Supp. 3d 223, 228–31 (S.D.N.Y. 2019) (collecting cases). *But see United States v. Brown*, 2020 WL 773012, at *2 (11th Cir. Feb. 18, 2020); *United States v. Blocker*, 378 F. Supp. 3d 1125, 1129–32

(N.D. Fla. 2019); *United States v. Banuelos*, 2019 WL 2191788, at *2–3 (D.N.M. May 21, 2019). Many frame it as the straightforward reading of the plain language. *See Boulding*, 379 F. Supp. 3d at 652 ("Under the plain language of the Act, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated. If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a 'covered offense.'") (citing *United States v. Davis*, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019)); *see also Wirsing*, 943 F.3d at 186.

The majority position invites strange outcomes. Section 2 of the Fair Sentencing Act left intact mandatory minimums for defendants responsible for 280 grams or more of crack cocaine. Before the Act, defendants responsible for such quantities were sentenced under a 10-year mandatory minimum regime. After the Act, defendants responsible for such quantities were sentenced under the same 10-year mandatory minimum regime.[1] In other words, § 2 of the Fair Sentencing Act had no effect on the sentencing exposure for high-quantity defendants. The Act had set out to modify lower-bound cocaine base penalties, not to invite courts to reduce the sentences of any pre-Act offender.

Does the plain language of the § 404(a) really entitle high-quantity defendants to another bite at the apple? The textual dispute mostly turns on how best to diagram a key sentence: "[T]he term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." 132 Stat. 5194 § 404(a). Are the "statutory penalties" in the second clause referring to those associated with "a Federal criminal statute," or with a "*violation*

---

[1] Wells' sentence was enhanced to a 20-year mandatory minimum due to a prior drug conviction. This enhanced mandatory minimum was eventually amended by the First Step Act, which reduced the penalty to 15 years and limited the enhancement to "serious drug felonies." 132 Stat. 5194 § 401.

4

of a Federal criminal statute"? In the case of the former, actual conduct is irrelevant and the second clause is clarifying § 404(a)'s sole reliance on the criminal statute's language. But under the latter interpretation the "statutory penalties" are those associated with the violation itself, focusing more on the breach than the rule.

One grammatical clue is the use of the prepositional phrase "for which," as opposed to "of which." The penalty, after all, is *for* the violation, but it is *of* the statute. Saying "the penalty for the statute is ten years" is a lazy (and imprecise) way of saying "the penalty for *violating* the statute is ten years." Better yet, one could say "the statute's penalty is ten years," which itself is a better-sounding arrangement of "the penalty of the statute is ten years." The Court can imagine identical sentence structures that might add color to the more abstract language of the Act. Sports provide useful illustrations: "A pop fly is the hitting of a baseball, the arc *of which* is sharply skyward within the ballpark, during an at bat." Here, "the arc of which" clearly modifies "baseball." On the other hand: "A strike is the knocking down of all ten pins, the reward *for which* is ten points, plus a bonus in the next round." Here, "the reward for which" clearly modifies the knocking down of the pins, not the pins themselves. If § 404 had read "a violation of a Federal criminal statute, the statutory penalties *of* which were modified by section 2 or 3 of the Fair Sentencing Act," the clumsy phrasing would have been redeemed by clarity of reference. The choice of "for which," however, suggests that the First Step Act conditions eligibility on the penalties for the actual violations.

Another textual clue is the inclusion of the word "statutory" in "the statutory penalties for which." If the penalties are drawn from "a Federal criminal statute," clarifying those penalties as "statutory" seems wholly redundant. Wells does not respond to this argument, but other courts have: "The use of the term 'statutory' simply indicates that the penalties modified must be the

5

penalties prescribed by statute, as opposed to a change in the Sentencing Guidelines, for example." *United States v. Martin*, 2019 WL 2571148, at *3 (E.D.N.Y. June 20, 2019). But of what relevance are the Guidelines in this context? The penalties referred to are only those that "were modified by section 2 or 3 of the Fair Sentencing Act of 2010." 132 Stat. 5194 § 404(a). Those sections modify statutes; neither refers to or alters the Guidelines. "The *Guidelines* penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" would make no sense. Here, the phrase "statutory penalties" either relates back to a "violation" or else is purely redundant, but it does not distinguish the already-inapplicable Guidelines.

A rebuttal interpretation posits that even if the second clause modifies "violation" instead of "Federal criminal statute," that "violation" may simply refer to the breach of the statute rather than the defendant's specific conduct. *See United States v. Askins*, 2019 WL 3800227, at *5 (D. Ariz. Aug. 6, 2019). The government's counterargument centers around the Supreme Court's language in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) ("[T]he term 'violation' does not imply a criminal conviction. It refers only to a failure to adhere to legal requirements.") (internal citation omitted). Criminal conduct infers a violation even if nothing is ever discovered or charged—does specifying the violation is "of a Federal criminal statute" cabin the nature of the violation to the terms of the indictment? This Court is not persuaded it does.

There is some question as to the constitutionality of the government's approach. As the government acknowledges, the landmark Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), "collectively held that any fact increasing either a statutory maximum or mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant." Opp'n n.6 18–19, ECF No. 695. Wells' indictment and verdict form specified only that he was responsible for at least 50

6

grams of crack cocaine—the much higher figure of 1.5 kilograms was a judicial finding. In theory, the drug quantity found by the jury could have been lower than the current 280-gram mandatory minimum threshold. But at the time of conviction, the judicial finding of 1.5 kilograms did not increase the statutory mandatory minimum (which was triggered by the 50 grams that the jury found beyond a reasonable doubt). What's more, § 404 can only reduce a defendant's sentence, whereas *Apprendi* and *Alleyne* concern only sentence increases. Finally, § 404 relief is discretionary, while *Apprendi* and *Alleyne* cover constitutional entitlements. *See White*, 2019 WL 3719006, at *21–24. The sentencing court's quantity determination need not have been found by a jury beyond a reasonable doubt.

Both parties appeal to the spirit of the Fair Sentencing Act and the First Step Act. The government points out a bizarre consequence of adopting Wells' reading—that a defendant responsible for 300 grams of crack cocaine would be eligible for a reduced sentence if he was sentenced on August 2, 2010, but an equally high-quantity defendant sentenced the very next day would not be eligible. Perhaps such an arbitrary disparity undermines the sentencing reform promised by the Acts. Opp'n 11–14, ECF No. 695. Wells, meanwhile, insists that the disparity between crack and powder cocaine sentencing had the potential to affect all crack cocaine defendants, and that to deny so many of them eligibility runs counter to congressional intent. Reply 5–6, ECF No. 699. This Court's instinct is that Congress meant what it said, and that it did not intend to sweep in defendants who were still above the increased mandatory minimum quantity threshold.

Despite the Court's suspicions of the popular interpretation of § 404(a), it need not incorporate the issue into its holding. Section 404(c) imparts substantial discretion to the district court: "Nothing in this section shall be construed to require a court to reduce any sentence

pursuant to this section." § 404(c), 132 Stat. at 5222. "That [Wells] is eligible for resentencing does not mean he is entitled to it." *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019) (quoting *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019)); *see also United States v. Sellers*, 776 F. App'x 143 (4th Cir. 2019); *United States v. Anderson*, 2020 WL 897738, at *2 (11th Cir. Feb. 25, 2020).

Even if Wells were eligible under the First Step Act—via the rule of lenity or on the merits—the Court would not in its discretion grant his motion for a reduced sentence. Wells is not the type of offender contemplated by either the Fair Sentencing Act or the First Step Act. The Fair Sentencing Act sought to reduce sentencing disparities between crack and powder cocaine defendants by reforming the sentencing regimes applicable to crack cocaine defendants. Section 404 of the First Step Act merely authorized the retroactive application of the Fair Sentencing Act. Wells faces no disparity between the mandatory minimum he was sentenced under and the one he would have faced "if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time." 132 Stat. 5194 § 404(b).

Wells himself acknowledges as much: "[The Court] can, in its discretion, decline to reduce the sentence on the basis of all the § 3553(a) factors, *including the quantity of drugs*." Reply 13, ECF No. 699 (emphasis added). And while the Court is confident that the quantity of drugs may properly influence its discretion, it does not agree with Wells or other district courts who look to 18 U.S.C. § 3553 factors in applying § 404(c). Section 3553 lays out factors to be considered in imposing a sentence, which is precisely what the Court declines to do here.

## IV. CONCLUSION

The Court is unconvinced that Wells is eligible for a reduced sentence under § 404 of the First Step Act. Even assuming without deciding that Wells is in fact eligible, the Court would not reduce Wells' sentence. His motion is accordingly **DENIED**.

It is **SO ORDERED**.


SIGNED this 5th day of March, 2020.

                                                        Royce C. Lamberth
                                                        United States District Judge