UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL WELLS,<br><br>*Defendant.* | Case No. 01-cr-253-RCL-3<br>*~~Filed under seal~~* |

*Ref 4/5/23*

## MEMORANDUM OPINION

Defendant Michael Wells is currently serving a 25-year sentence after a jury found him guilty of drug trafficking and firearms offenses stemming from his participation in an illegal drug operation in Washington, D.C. After serving more than 18 years in prison, Wells moved to reduce his sentence to time served based on Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, § 404, 132 Stat. 5194. Section 404 allows courts to impose a reduced sentence "as if" the reduced crack cocaine penalties established by Sections 2 and 3 of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, had been in effect "at the time of the commission of the offense, not at the time of the original sentencing," *Concepcion v. United States*, 142 S. Ct. 2389, 2402 (2022). The government agrees with Wells that he is eligible for relief under the First Step Act and does not object to the Court exercising its discretion to reduce his sentence.

After considering the parties' briefing, the applicable law, and the record therein, the Court will **GRANT** Wells's motion. His sentence will be reduced from 25 years to the approximately 20 years of time already served.

1

## I. BACKGROUND

When he was 15 years old, Wells began participating in a narcotics conspiracy dubbed the "Marco Polo Crack Distribution Ring."[1] Presentence Investigation Report ("PSR"), ECF No. 732-1, ¶¶ 8, 9. This organization sold crack cocaine in and around northeast Washington, D.C. from 1992 until 2000. *Id.* ¶ 9. Wells and Reginald Baugham, Wells's brother and co-defendant, were the ring's principal suppliers. *United States v. Baugham*, 449 F.3d 167, 171–72, 180 (D.C. Cir. 2006). In 2001, a grand jury indicted Wells on four counts: (1) conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846 ("Count 1"); (2) unlawful distribution of 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(iii) ("Count 7"); (3) unlawful distribution of 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) ("Count 23"); and (4) possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) ("Count 24"). Indictment, ECF No. 1.

In 2003, a jury acquitted Wells on Count 7 but found him guilty on Counts 1, 23, and 24. *See* PSR ¶ 7. The verdict form did not ask the jury to find the specific amount of crack cocaine that Wells trafficked. Rather, it only required the jury to find that Wells either conspired to or in fact distributed 50 grams or more of crack cocaine. *See* Verdict Form, ECF No. 371, at 4.

The Probation Office prepared a PSR. Probation determined that Wells's drug offenses involved approximately 1.5 kilograms of crack cocaine. PSR ¶ 37. At the time, 1.5 kilograms of crack cocaine triggered the highest base offense level under the United States Sentencing Guidelines (the "Guidelines") for drug distribution. *See* U.S. Sent'g Guidelines Manual

---

[1] The ring was named after Marco Polo Honesty, Jr., one of Wells's co-defendants and alleged co-conspirator, who "spearheaded" the enterprise. Presentence Investigation Report ("PSR") ¶ 8, ECF No. 732-1, ¶ 9. At trial, Honesty was acquitted of all charges. *See id.* n.2; *United States v. Baugham*, 449 F.3d 167, 170 (D.C. Cir. 2006).

2

("U.S.S.G.") ch. 2, § 2D1.1(c) (U.S. Sent'g Comm'n 2002). This conduct gave Wells a base offense level of 38. *Id.* With a 4-point enhancement for serving as "an organizer or leader of a criminal activity involving five or more participants," *see id.* ch. 3, pt. B, § 3B1.1(a), Wells's total offense level was 42. PSR ¶¶ 37–42. This total offense level rendered a Guidelines range of 360 months to life imprisonment for his drug offenses. U.S.S.G. ch. 5 pt. A.

In addition to the Guidelines calculation, the sentencing judge, Judge Henry H. Kennedy, considered the then-applicable statutory penalties. At the time, Wells's convictions on Counts 1 and 23—conspiracy to distribute and unlawful distribution of 50 grams or more of crack cocaine— resulted in a minimum statutory penalty of 120 months and a maximum of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(B). That said, Wells's minimum potential sentence for Counts 1 and 23 was 240 months due to a prior D.C. Code conviction for possession with intent to distribute cocaine.[2] *See* Def.'s Suppl. Mot., ECF No. 726, at 4. Additionally, his conviction on Count 24— firearm possession during a drug trafficking crime—carried a mandatory 60-month sentence. *See* 18 U.S.C. § 924(c).

At sentencing, Judge Kennedy adopted the findings in Wells's PSR and the accompanying Guidelines calculations. *See* Minute Entry (12/18/2003). On appeal, the D.C. Circuit affirmed Wells's convictions but vacated his original sentence in light of *United States v. Booker*, 543 U.S. 220 (2005), which held that the Guidelines are only advisory. *See Baugham*, 449 F.3d at 182–84. At resentencing, Judge Kennedy sentenced Wells to 300 months' imprisonment—240 months for the conspiracy and distribution counts, to run concurrently, and 60 months for the firearm count, to run consecutively to the drug offenses. *See* Resent'g Tr. 10:9–19, ECF No. 693; Am. J., ECF

---

[2] Wells's sentence on that charge was suspended and the prior conviction did not affect his criminal history category under the Guidelines because it was related to the conspiracy charge. *See* Def.'s Suppl. Mot., ECF No. 726, at 4; PSR ¶ 47.

3

No. 605. Because Wells had the prior D.C. Code conviction for distributing cocaine, the 240-month sentence represented the mandatory minimum for his drug offenses. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (2006) (requiring a 10-year minimum sentence for a violator with a "prior conviction for a serious drug felony").

Wells previously moved to reduce his sentence under the First Step Act of 2018. ECF No. 687 [hereinafter "Def.'s Mot."]. The Court denied this motion after determining that Wells was ineligible for relief due to actual quantity of drugs for which he was responsible. *See* Mem. Op., ECF No. 712, at 3–7. Wells timely appealed his conviction. Notice, ECF No. 713. While his appeal was pending, the Circuit decided *United States v. White*, holding that (1) eligibility under the First Step Act turned on the quantity listed in the defendant's statute of conviction, not the actual quantity, and (2) a district court must consider the sentencing factors at 18 U.S.C. § 3553(a) when adjudicating a First Step Act motion. 984 F.3d 76, 86, 90–93 (D.C. Cir. 2020). The Circuit thus remanded Wells's case for further proceedings in light of *White*. Mandate, ECF No. 721.

While his First Step Act motion was pending at the Circuit, Wells moved in this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A), ECF No. 718, a motion he later supplemented, ECF No. 727. After the Circuit issued the mandate remanding Wells's First Step Act motion, he filed a supplement to that motion. *See* Def.'s Suppl. Mot. In response to Wells's filings, the government did not oppose Wells's First Step Act motion, *see* ECF No. 730 [hereinafter "Gov't Resp."], but did oppose his compassionate-release motion, *see* ECF No. 731. Wells then replied in support of both of his pending motions. Def.'s Reply, ECF No. 734.

In 2022, the Court denied Wells's motion for compassionate release, but reserved ruling on his First Step Act motion pending the Supreme Court's decision in *Concepcion*.[3] *See* Mem.

---

[3] Wells timely appealed this Court's decision on his compassionate-release motion. Notice, ECF No. 741. Briefing in that appeal is due in March 2023. *See United States v. Wells*, No. 22-3009 (D.C. Cir.).

4

Op., ECF No. 738. At the same time, the Court corrected a prior clerical error and clarified that Wells's sentence includes a supervised release term of 10 total years. Order, ECF No. 739.

Wells submitted supplemental briefing in the wake of *Concepcion* and the Chief Judge Beryl A. Howell's decision in *United States v. White*, No. 93-cr-097, 2022 WL 3646614, *1 (D.D.C. Aug. 24, 2022). ECF Nos. 744 & 745. The Court then ordered the government to provide supplemental briefing addressing whether the *Concepcion* and *White* decisions changed the government's original position with respect to Wells's motion. Order, ECF No. 746. The government responded that the decisions did not, and that the government still did not oppose a sentence reduction pursuant to the First Step Act. *See* ECF No. 749 [hereafter "Gov't Suppl. Resp."]. Wells replied. ECF No. 750.

Wells has served more than 20 years in prison.[4] He will be eligible for home detention starting in December 2023 and has a projected release date of June 2024. *See* Ex. 1 to Gov't Suppl. Resp., ECF No. 749-2, at 1.

## II. LEGAL STANDARD

"For nearly 25 years, federal criminal law punished offenses involving crack cocaine far more harshly than offenses involving powder cocaine." *United States v. Lawrence*, 1 F.4th 40, 42 (D.C. Cir. 2021). In 2010, "[a]fter two decades of criticism, Congress reduced, but did not eliminate, the crack-to-powder disparity in the Fair Sentencing Act," by "reduc[ing] the disparity between cocaine base and powder cocaine from 100-to-1 to 18-to-1," *id.* (internal citations omitted). Specifically, Section 2 of the Act increased the threshold drug amounts required to trigger mandatory minimum sentences for crack offenses. 124 Stat. at 2372 § 2. Before the Act, possessing 50 grams of crack cocaine triggered a 10-year mandatory minimum. *Id.* The Act

---

[4] As of November 9, 2022, Wells had served 19 years, 11 months, and 30 days in prison. *See* Ex. 1 to Gov't Suppl. Resp. (Bureau of Prisons Records), ECF No. 749-2, at 3.

5

increased that threshold to 280 grams. *Id.* Likewise, the 5-gram threshold that previously triggered a 5-year mandatory minimum was increased to 28 grams. *Id.* Those revisions initially did not apply to defendants sentenced before August 3, 2010, the date of the Fair Sentencing Act's enactment. *See United States v. Swangin*, 726 F.3d 205, 208 (D.C. Cir. 2013). Eight years later, Congress passed the First Step Act of 2018. 132 Stat. at 5194. Section 404 of the Act, which made retroactive the Fair Sentencing Act's modifications, "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," so long as they "explain their decisions and demonstrate that they considered the parties' arguments." *Concepcion*, 142 S. Ct. at 2404.

In considering Wells's motion, the Court follows the Circuit's instruction in *United States v. White*, 984 F.3d 76 (D.C. Cir. 2020). *See United States v. Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022) ("*White* provides our Circuit's framework to evaluate First Step Act motions"). The two-step process for ruling on a First Step Act motion is the following:

> First, under section 404(a), the court must determine whether a defendant is eligible for relief—that is, whether the movant committed a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 ..., that was committed before August 3, 2010." First Step Act § 404(a), 132 Stat. at 5222. . . .
>
> Second, under section 404(b), a "court that imposed a sentence for a covered offense may ... impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act ... were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Put simply, once a defendant is considered eligible, the district court exercises its "broad discretion" to decide "whether it *should* reduce the sentence." *White*, 984 F.3d at 88 (quoting *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020)); *see also* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."), 132 Stat. at 5222.

*Id.*

### III. DISCUSSION

#### A. Wells Is Eligible for Resentencing Under the First Step Act

The parties agree that, in light of *White*, Wells is eligible for resentencing under the First Step Act. Wells was sentenced to 20 years in prison for his convictions on Count 1, conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846, and Count 23, unlawful distribution of 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Before 2010, violations of 21 U.S.C. §§ 841(a) & 846 involving 50 grams or more of cocaine base carried a mandatory minimum sentence of 10 years in prison and possibility of life. *See Terry v. United States*, 141 S. Ct. 1858, 1862 (2021). Section 2(a) of the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 841(b)(1)(A) necessary to trigger certain mandatory minimum penalties. *See* 124 Stat. at 2372. With the retroactive application of the Fair Sentencing Act through the First Step Act, 280 grams—rather than 50 grams—of cocaine base became the quantity necessary to trigger a mandatory minimum sentence of 10 years' incarceration and a maximum life sentence. *See id.* Similarly, "a person charged with the original elements of [21 U.S.C. § 841(b)(1)] subparagraph (A)—knowing or intentional possession with intent to distribute at least 50 grams of crack [like Wells]" "is now subject to the more lenient prison range for subparagraph (B): 5-to-40 years." *Terry*, 141 S. Ct. at 1863.

Because Wells's statute of conviction was modified by the First Step Act, and his offense occurred prior to August 3, 2010, he committed a covered offense and is thus eligible for relief under Section 404. *See White*, 984 F.3d at 86.

#### B. This Court Will Exercise Its Discretion to Reduce Wells's Sentence

A "district court may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act." *Palmer*, 35 F.4th at 851 (quoting *White*, 984

7

F.3d at 90). Some important factors to consider are "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct," to ensure that a sentence is "sufficient, but not greater than necessary, to fulfill the purposes of [18 U.S.C.] § 3553(a)." *Id.* (quoting *White*, 984 F.3d at 90); *see also Concepcion*, 142 S. Ct. at 2396 (affirming that courts "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of facts (such as behavior in prison) in adjudicating a First Step Act motion" and are "obligated to consider nonfrivolous arguments presented by the parties" but are "not compel[led] . . . to exercise their discretion to reduce any sentence based on those arguments").

Wells requests a sentence reduction to time served. Def.'s Suppl. Mot. at 3. The government does not object to Wells's request. Gov't Resp. at 1. The government further contends that a sentence of time served, which falls within the updated Guidelines range, is an appropriate reduction and is "consistent both with the combined remedial purpose of the Fair Sentencing Act and the First Step Act to treat past and current cocaine offenders in a more uniform way and the [18 U.S.C.] Section 3553(a) factors, which aim to avoid sentencing disparities among like offenders." *Id.* at 12.

The Court agrees with both parties that a sentence of time served is fitting based on an analysis of the new statutory minimum and maximum penalties, current Guidelines, and the relevant sentencing factors listed in 18 U.S.C. § 3553(a).

### 1. New Statutory Minimum or Maximum Penalties

Were Wells to be sentenced today, he would face lower minimum and maximum statutory penalties. The Fair Sentencing Act raised the threshold quantity required to trigger the same minimum (10 years' incarceration) and maximum (life imprisonment) penalties for Wells's statute

of conviction. *See* 21 U.S.C. § 841(b)(1)(A). In Wells's case, the jury made no findings on quantity, but found him guilty of Count 1, conspiracy to distribute at least 50 grams of cocaine base, and Count 23, possession with intent to distribute at least 50 grams of cocaine base. If Wells were convicted of the same drug charges involving that quantity today, he would face a minimum of 5 years and a maximum of 40 years in prison.[5] The decreased statutory penalties weigh in favor of a sentence reduction.

### 2. Current Sentencing Guidelines Range

Similarly, if Wells were sentenced today, he would face a lower recommended sentence under the Guidelines. Because the conspiracy involved 1.5 kilograms, as determined by the PSR, Wells's current base offense level would be 32. U.S.S.G., ch. 2, § 2D1.1(c) (U.S. Sent'g Comm'n 2021). With the 4-level enhancement for being a leader of a 5-member conspiracy, his total offense level would be 36. *See id.* ch. 3, pt. B, § 3B1.1(a). Wells's mandatory 5-year sentence for his firearms conviction on Count 24 remains unchanged. Def.'s Suppl. Mot. at 13. Thus, under the current Guidelines, with a criminal history of I, Wells's recommended Guidelines sentence would be 248 to 295 months. *See* Def.'s Mot. at 9; U.S.S.G. ch. 5, pt. A. At the time of Wells's resentencing, the minimum Guidelines sentence he could have received—and did receive—was 300 months. That sentence exceeds even the high end of the Guidelines range today. Accounting for good time credit, Wells has already served more than the bottom range of the updated Guidelines sentence. *See* Def.'s Suppl. Mot. at 15–16; Gov't Resp. at 11. This factor militates strongly in favor of a sentence reduction.

---

[5] The parties debate about whether and to what extent the Court should consider Wells's prior D.C. Code conviction, resulting in the mandatory 10-year enhancement to his minimum sentence, in the First Step Act analysis. *See* Def.'s Suppl. Mot. at 13–15; Gov't Resp. at 12. The Court need not resolve this debate because "[t]he government notes, and the defendant concedes, that subsequent changes to [the relevant statute governing the enhancement] are not retroactive." Gov't Resp. at 12 n.3.

### 3. Remaining 18 U.S.C. § 3553(a) Factors

The Court will next address the relevant Section 3553(a) factors, including the nature and circumstances of the offense, Wells's history and characteristics, Wells's post-sentencing conduct, the need to avoid unwarranted sentencing disparities, and the need for the sentence imposed. *See* 18 U.S.C. § 3553(a)(1)–(2), (6). As the Supreme Court recently reiterated, in conducting a Section 3553(a) analysis, "a district court is [not] required to articulate anything more than a brief statement of reasons," *Concepcion*, 142 S. Ct. at 2404, and the First Step Act does not "require a district court to make a point-by-point rebuttal of the parties' arguments," *id.* at 2405. *See Palmer*, 35 F.4th at 853 ("[T]here is no requirement that sentencing courts expressly list or discuss every Section 3553(a) factor") (citing *United States v. Knight*, 824 F.3d 1105, 1110 (D.C. Cir. 2016)).

#### a. Nature and Circumstances of the Offense

There is no doubt that Wells's offense was serious. Evidence at trial, in the form of multiple witnesses and recorded conversations, described Wells's extensive involvement in the Marco Polo Crack Distribution Ring.[6] PSR ¶¶ 16, 21. Wells and Baugham sold and re-sold crack cocaine in furtherance of the conspiracy multiple times per week over a nearly 10-year period. *See id.* ¶ 10–11. Not only did Wells buy and sell crack cocaine himself, he managed other dealers. *Id.* ¶ 11. And Wells carried multiple firearms while engaging in his criminal activities. *Id.* & n.3.

Consistent with the Circuit's instruction that this Court "may consider both judge-found and jury-found drug quantities as part of its exercise of discretion" under the First Step Act, this Court will consider the quantity involved in Wells's offense. *White*, 984 F.3d at 88. As previously discussed, the PSR determined, and the sentencing judge considered, that Wells was responsible

---

[6] That said, the Circuit noted that the government's proof that Wells conspired with 5 or more persons was "exiguous at best." *Baugham*, 449 F.3d at 174. Yet, the Circuit affirmed the conviction after harmless error analysis. *Id.* at 171–74.

10

for approximately 1.5 kilograms of crack cocaine.[7] That quantity, combined with the leader enhancement and consecutive firearms sentence, results in a minimum recommended sentence of 20 years' incarceration under the current Guidelines—an amount that he has already served.

Despite the gravity of Wells's conduct, which could lead to a sentence greater than 20 years, the Court is nevertheless convinced that a sentence closer to the minimum when calculated under the current Guidelines, and therefore a reduction, is appropriate here. After the Circuit's *Booker* remand, Judge Kennedy, who presided over Wells's trial, sentenced Wells in line with the minimum of the then-applicable Guidelines. Thus, reducing Wells's sentence to the minimum of the current Guidelines would maintain consistency with Judge Kennedy's sentence.

### b. History and Characteristics of the Defendant

Wells argues that his young age at the time of the offense is a strong factor weighing in favor of a sentence reduction. *See* Def.'s Suppl. Mot. at 16–19. The government contends that Wells's managerial role in the conspiracy negates any argument that his youth at the time of the offense is a mitigating factor. *See* Gov't Resp. at 12. The Court previously determined Wells's age at the time of his involvement in the instant offense—15 years old at the conspiracy's beginning and 23 at its conclusion—did not entitle him to compassionate release. Mem. Op., ECF No. 738, at 6–7. However, determining what is an extraordinary or compelling reason warranting compassionate release and determining what is a suitable sentence under the Section 3553(a) factors are entirely different inquiries. Sentencing judges routinely consider a host of characteristics that are not at all extraordinary—including age—when imposing a sentence in the first instance. *See United States v. Hicks*, Crim. No. 93-97-2 (BAH), 2021 WL 1634692, at *9

---

[7] This figure appears to be based in part on testimony from (a) Earl Nelson, a fellow dealer and cooperating witness, that Wells sold him "ounces" of crack cocaine 2 or 3 times a week for an approximately 9-year period, and (b) Perry Nelson, another dealer and cooperator, who said that Wells once sold him 62 grams of crack cocaine. *See id.* at 173; PSR ¶¶ 19–30.

11

(D.D.C. Apr. 27, 2021). There is no reason the same should not be true for purposes of a First Step Act motion.

Though Wells was not a minor by the end of the conspiracy, the Court considers Wells's young age when he joined the conspiracy, and his personal growth since then, to be an important factor weighing in favor of a sentence reduction. This conclusion is consistent with the Supreme Court's insistence that "youth matters in sentencing," *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021), and that district courts should consider the "hallmark features" of youth, including factors such as "immaturity, impetuosity, and failure to appreciate risks and consequences" as well as the "possibility of rehabilitation." *Miller v. Alabama*, 567 U.S. 460, 477–78 (2012). The Court does not share the government's view that Wells's age and role in the conspiracy operate in a zero-sum environment; both are relevant factors in determining the appropriateness of a sentence reduction. Moreover, after careful consideration of his post-sentencing conduct, discussed *infra* Part 3(c), the Court is confident that Wells is a different person today than he was when he committed his crimes.

Indeed, it seems that the first shock to Wells's system came upon his arrest for this very crime. After his arrest, Wells was released for placement in halfway house program. PSR ¶ 6. With supervision and structured conditions, he complied with all of the program's requirements and was released to home confinement with electronic monitoring prior to trial. *Id.* Wells was only remanded to the Bureau of Prisons' custody after the jury rendered a guilty verdict. *Id.* Wells's successful completion of this pre-trial program indicates to the Court that Wells began developing an appreciation for risks and consequences as well as a process of rehabilitation prior to sentencing. That growth, combined with his conduct while incarcerated, is sufficient to afford him a sentencing reduction.

### c. Defendant's Post-Sentencing Conduct

As the Supreme Court has instructed, "in deciding whether to grant First Step Act motions and in deciding how much to reduce sentences," district courts may "look[ ] to postsentencing evidence of violence or prison infractions as probative." *Concepcion*, 142 S. Ct. at 2403; *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). Judges in this District have given post-sentencing conduct "substantial weight." *See White*, 2022 WL 3646614, at *22. In evaluating a defendant's post-sentencing conduct, the Court considers the defendant as he appears today, "not on the date of his offense or the date of his conviction." *Concepcion*, 142 S. Ct. at 2396.

Like his behavior following his arrest, Wells has demonstrated substantial evidence of rehabilitation through consistent work history and prison programming. Wells worked as a maintenance mechanic and is currently employed in food service. *See* Def.'s Mot. at 12; Ex. 1 to Def.'s Suppl. Mot. (Bureau of Prisons Records), ECF. No. 726-2. In addition to his work responsibilities, he has engaged in "over 550 hours of classes and programs." Def.'s Suppl. Mot. at 20. Notably, Wells obtained his GED, prepared to obtain his commercial driver's license, and built skills in areas such as business management, customer service, and computers. *See* Ex. 1 to Def.'s Suppl. Mot. Wells's diligence in his studies has positioned him to secure employment post-release. In fact, after closely following the news of the nationwide shortage of commercial truck drivers, Wells plans to obtain his commercial driver's license and secure a position in the trucking industry.[8] *See* Def.'s 2d Suppl. Mot., ECF No. 737, at 1; Ex. 3 to Def.'s 2d Suppl. Mot., ECF No.

---

[8] In Wells's first supplemental First Step Act briefing, he included a letter of intent from Akia Atkins, the owner of National Communications Services, LLC, who represented that she "offered Mr. Michael Wells a full time position with benefits to work for my company as a Data Technician upon his release." *See* Ex. 2 to Def.'s Suppl. Mot.

13

737-1, at 2–19. Wells states that he is "ready and willing to work hard and help our great nation by working in a sector that is in dire need." Ex. 3 to Def.'s 2d Suppl. Mot. at 1. The Court would sometimes consider such a statement skeptically, but given Wells's aforementioned activities, this appears to be a genuine commitment to working in a vital industry for this nation.

Wells expresses evidence of his rehabilitation in his own words. In a letter to the Court, he states that he is "remorseful for [his] actions of the past and ha[s] spen[t] this time incarcerated preparing to be a role model to the people within [his] community." Ex. 3 to Def.'s 2d Suppl. Mot. at 1. He notes that "[t]hrough [his] experiences[,] [he] can reach out to others in similar situations and lead them away from that [criminal] path and into a positive lifestyle." *Id.* He believes that a sentence reduction would "allow [him] the opportunity to step up and make up for [his] past errors." *Id.* Finally, he insists that he is "not a danger to any person, or the community" and that he "will obey all local, State, and Federal laws, as well as the supervised release conditions." *Id.*

The Court has also reviewed the thoughtful letters from Wells's sister, aunt, three children, and friend illustrating the Wells's positive ties to his family and community. Wells's sister speaks of his remorse for his actions and his changed character. ECF No. 723. His aunt describes how Wells's incarceration meant that he was unable to be with his family to mourn the loss of his parents, who died just months apart in 2016. *See* Ex. 2 to Def.'s Suppl. Mot. (Letters of Support), ECF No. 726-3, at 5. His children have lacked the opportunity to spend time with him outside of prison, and they hope that a sentence reduction would enable him to build relationships with grandchildren that he has never met. *See id.* at 2–4. And a proprietor in the music and television business describes his close bond with Wells as a "sounding board, as an adviser, and as a friend." *See id.* at 6. These letters demonstrate the personal connections Wells

---

(Letters of Support), ECF No. 726-3, at 7. Based on his more recent supplemental filing, it appears that Wells instead intends to pursue work in the commercial trucking industry.

14

fostered while incarcerated and the existence of a network to support him upon release. It is noteworthy that he has worked to maintain these connections and the Court considers these sorts of ties positively.

The only real point of disagreement between the parties regarding Wells's post-sentencing conduct is how to view a disciplinary incident from last year that resulted in charges of possessing a cellphone and disruptive conduct. *See* Ex. 1 to Def.'s Suppl. Mot. at 12–13; Ex. 3 to Gov't Suppl. Resp., ECF No. 749-3. These charges fall within the category of the Bureau of Prisons' most serious offenses. *See* Ex. 3 to Gov't Suppl. Resp. The rest of Wells's disciplinary history includes the following charges, all of which were categorized by the Bureau of Prisons as low or moderate severity: being in an unauthorized area (in 2016), refusing to obey an order (in 2016), possession of contraband (in 2006), and using another inmate's identification number to place a telephone call (in 2006).[9] *See* Ex. 1 to Gov't Suppl. Resp., ECF No. 749-1.

Though the government concedes that the newest infractions do not change government's position that it does not oppose a sentence reduction for Wells, *see* Gov't Suppl. Resp. at 1, the government spills much ink describing how a cellphone poses a special danger in the prison context as a "hazardous tool" to coordinate escapes, introduce contraband, assault other inmates, obfuscate investigations, and other carry out nefarious purposes. *See id.* at 9–12.

It is troubling that Wells committed his most serious infractions while his First Step Act motion was pending before this Court. And the Court is mindful of the particular perils that inmate cellphone possession creates. However, the Court is confident that Wells's largely clean disciplinary record over more than 20 years is more demonstrative of his changed character than

---

[9] A previous version of Wells's disciplinary record included an additional infraction—using another inmate's identification number (in 2020)—but he successfully appealed the charge and it was later removed from his disciplinary record. *See* Ex. 1 to Def.'s Suppl. Mot. at 12–13; Def.'s Reply, ECF No. 734, at 8.

15

a single incident. The Court would perhaps feel otherwise if the Bureau of Prisons considered Wells to be a particular danger. However, at this point, he is housed in a low security facility with a custody classification of "minimum." *See* Def.'s Suppl. Mot. at 21; Ex. 1 to Def.'s Suppl. Mot. at 11. According to the Bureau of Prisons, "minimum" is the lowest security classification in the system. *See About Our Facilities*, FED. BUREAU OF PRISONS, https://www.bop.gov/about/facilities/federal_prisons.jsp (last visited Jan. 31, 2023). The Bureau describes "minimum security institutions" as having "a relatively low staff-to-inmate ratio" and "limited or no perimeter fencing." *Id.* The Bureau of Prisons' designation suggests that the Court's overall intuition about Wells's conduct is accurate—that the past 20 years has led to personal growth and made him a diminished danger to the community, which are some of the primary purposes of the 18 U.S.C. § 3553(a) inquiry.

The letters submitted to the Court by Wells, his family, and his friends demonstrate his remorse for his actions, his desire to maintain meaningful relationships, and his goal to build positive change in his community. Wells's work and programming history while in prison shows a strong work ethic, and Wells has positioned himself well to obtain employment upon release. His largely unblemished disciplinary record over more than two decades in prison illustrates his respect for rules. Thus, the Court finds that, on balance, Wells's post-sentencing conduct suggests that he would contribute constructively to his community if released. The government's overall view that Wells merits a sentence reduction helps to further convince this Court that his character has changed over these last two decades.

### d. Need to Avoid Unwarranted Sentence Disparities

Reducing Wells's sentence would maintain consistency with other defendants who received sentence reductions pursuant to the First Step Act in this District. Antone White, Eric Hicks, Kevin Williams-Davis, McKinley Board, and Gary Wyche were all originally sentenced to

16

life imprisonment for participating in illegal drug distribution rings in Washington, D.C. *See White*, 2022 WL 3646614, at *4–5; Mot. to Reduce Sentence, *United States v. Williams-Davis*, No. 91-cr-559-1 (TFH), ECF No. 2365, at 13–14; Mot. to Reduce Sentence, *United States v. Board*, No. 91-cr-559-11 (TFH), ECF No. 2331, at 8–9; *United States v. Wyche,* Case No. 89-cr-36-RCL-5, 2023 WL 130825, at *1 (D.D.C. Jan. 9, 2023). Those operations trafficked tens or hundreds of kilograms of illegal drugs. *See White*, 2022 WL 3646614, at *4–5; Sent'g Tr. 8:1–6 (Mar. 10, 1994), *Board*, ECF No. 1493; *Wyche,* 741 F.3d at 1288–89. Most engaged in violent activity, including murder. *See White*, 2022 WL 3646614, at *13–14; Mot., *Williams-Davis*, at 13–14. Yet, consistent with the text and purpose of the First Step Act, as well as a consideration of the sentencing factors in 18 U.S.C. § 3553(a), the sentences of all four defendants were reduced. Chief Judge Howell reduced White's and Hicks's original life sentences to 35 and 33 years, respectively. *See White*, 2022 WL 3646614, at *12–14. Judge Thomas F. Hogan reduced Williams-Davis's and Board's original life sentences to approximately 30 years and 28 years, respectively. *See* Order, *Williams-Davis*, ECF No. 2376; Order, *Board*, ECF No. 2344. And the undersigned reduced Wyche's life sentence to 28 years. *Wyche,* 2023 WL 130825, at *1.

Wells's case presents even more compelling factors weighing in favor of a sentence reduction. Most importantly, Wells's criminal history differs significantly from the aforementioned defendants. Wells trafficked in far smaller quantities of illegal drugs than those defendants. Though Wells used firearms to carry out his criminal activity, he was never implicated in violent activities on the order of White, Hicks, Williams-Davis, or Board. Moreover, those defendants—and White in particular—had troubling post-sentencing disciplinary histories. *See* Gov't Suppl. Resp. at 8. As discussed above, Wells was cited for a handful of infractions over the course of more than 20 years, the majority of which were classified as low severity. White, on the

other hand, engaged in 29 disciplinary infractions, nearly a third of which involved weapons, violence, or threats to commit violence. *See White*, 2022 WL 3646614, at *19.

Based on these considerations, reducing Wells's sentence to time served maintains consistency with other similarly-situated defendants.

### e. *Need for the Sentence Imposed*

The Supreme Court describes "the four identified purposes of sentencing" as "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 581 U.S. 62, 67 (2017) (internal citation omitted). This Court is satisfied that those purposes may still be served with a reduced sentence. The more than two decades Wells has spent incarcerated and separated from the outside world, including his children, grandchildren, family, and friends, appears to be adequate punishment for Wells as well as deterrence both to him and others. The Bureau of Prisons categorizes Wells as low risk, indicating that his release would present a minimal danger to the community. Finally, Wells demonstrates substantial rehabilitation through his own words and actions. Therefore, the Court concludes that a sentence of time served is "sufficient, but not greater than necessary" to achieve the aims of sentencing. 18 U.S.C. § 3553(a).

\* \* \*

"Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion." *Concepcion*, 142 S. Ct. at 2401. This Court, using its discretion, concludes that the 18 U.S.C. § 3553(a) sentencing factors demonstrate the appropriateness of a sentence reduction for Wells. The sentence reduction requested by Wells is modest, and the various sentencing factors lead this Court to conclude that he has made great strides in reforming himself into a productive and beneficial member of society.

put on home detention at the end of the year and released shortly thereafter, is a proper and just conclusion for his case.

## IV.   CONCLUSION

Wells is eligible for a reduced sentence under Section 404 of the First Step Act and this Court will exercise its discretion to reduce Wells's sentence. His motion is accordingly **GRANTED**. A separate and consistent Order shall issue this date.

SIGNED this ___2/15___ day of February, 2023.

Royce C. Lamberth
United States District Judge